**Affirmed as Modified; Opinion Filed July 21, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00726-CR
### No. 05-16-00727-CR

**ANTONIO DEMOND DOUGLAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F14-45376-L & F14-45379-N**

# MEMORANDUM OPINION

Before Justices Fillmore, Evans, and Boatright
Opinion by Justice Evans

Antonio Demond Douglas appeals his convictions for evading arrest using a vehicle and aggravated robbery. The jury assessed punishment at 12 years' imprisonment in the evading arrest case and 28 years' imprisonment in the aggravated robbery case. A fine of $10,000 was also assessed in each case. On appeal, appellant challenges the sufficiency of evidence to prove identity in the aggravated robbery case. In both cases, Appellant alleges that the trial court abused its discretion in overruling appellant's objection to the State's jury argument. We modify the trial court's judgments to reflect appellant pleaded not true to the enhancement paragraph alleged in the indictments. As modified, we affirm the trial court's judgments.

BACKGROUND

On June 24, 2014, two black men robbed the Subway shop on Spring Valley Road in Richardson. Ivan Pang, one of the customers in the shop at the time of the robbery, testified that he lived in an apartment building right across the street from the Subway, and around 7:00 p.m. went to the shop to get a sandwich for dinner. As he jogged to the shop, he saw two men around the corner of the Subway covering their faces with what looked like a t-shirt or a "do-rag." The men were taller than his own 5'7" height and looked athletic. Pang thought they looked about his age, which was 26. When Pang went into the shop, there was one employee working at the cash register and two other customers, one which was an older man who was eating. While Pang waited in line, the two men he had seen outside came in with guns pointed at everyone and asked for their money. One of the robbers was four or five steps away from Pang pointing the gun at his face. Pang gave the robber his wallet. Pang testified that one of the robbers threatened the cashier and after he was given the money from the register, asked for all the money in the safe. He continued threatening the cashier even after the cashier told him that he did not know the combination. That same robber then threatened the man who was eating and took a wallet and phone from him. As the robbers backed out of the shop, they threatened everyone not to move or call the police. Pang saw them run in the same westerly direction they had come from before he entered the shop. Pang did not see the robbers get into a car, but assumed they did because he did not see them on the streets and there was no other way they could have gone. Pang's wallet and its contents were returned to him less than a week after the robbery. Pang identified the wallet, money, and cards shown in State's Exhibit 13 as belonging to him.

Officer Raymond Nieto of the Richardson Police Department was the first officer on the scene. He talked to the Subway clerk and when he walked around the counter, saw that the register was open with no cash in it. Three other people were in the shop. The clerk gave the

officer a description of the two men and told him that the men took off on foot going in a westbound direction. Officer Nieto testified that the robbery dispatch included information that an electronic tracking system (ETS) tag had been activated. Officer Nieto explained that an ETS tag is a device that is placed with some bills in a cash register which sets off an alarm to enable the police to track the bills which have been taken. He testified that the police department had placed ETS tags in various locations throughout the city and that an ETS tag had been taken by the people who robbed the Subway. Officer Nieto also recovered the security surveillance tape from the store, which was admitted into evidence as State's Exhibit 12.

Officer Jason Smith was patrolling with his training officer in a marked squad car, heard the aggravated robbery dispatch over the radio, and heard Sergeant Alcorn say on the radio that he had placed an ETS tag at that Subway location less than hour before the robbery. Officer Smith was in the general area and immediately started picking up an ETS signal. The signal became very strong on a frontage road about a mile and a half to two miles from the Subway and pointed them towards the small pack of cars in front of them. They knew that the suspects were two black males and drove up to the right side of a Mercury Grand Marquis in front of them with two black males. When the ETS signal indicated that the tracker was right outside their vehicle, Officer Smith got behind the Grand Marquis and tried to initiate a traffic stop.[1] The Grand Marquis initially slowed down like it was going to pull over but then accelerated quickly. During the pursuit that followed, the driver of the Grand Marquis attempted to take a U-turn lane, lost control of the vehicle and crashed into a cement pillar. The in-car video of the pursuit and apprehension of the suspects in the car was admitted into evidence as State's Exhibit 15. After the crash, the driver immediately got out of the vehicle and was arrested. Officer Smith

---

[1] Officer Smith testified that Sergeant Alcorn and Officer Yee were also behind him in marked police vehicles. Officer Yee testified at trial. Sergeant Alcorn did not testify.

identified appellant as the driver. He was wearing a white t-shirt and dark colored pants. The man sitting in the passenger seat was trapped as a result of the accident and the Fire Department had to extract him from the vehicle. He was also wearing a white t-shirt. Two loaded guns were recovered from the vehicle – one between the passenger seat and door, and another on the floorboard. Money, wallets, cell phones, the ETS tag from the Subway, and several items of clothing, including a navy blue jacket, a black "do-rag", another small "do-rag", a colorful scarf, and a white t-shirt, were also recovered from the vehicle.

ANALYSIS

## I. Sufficiency of the Evidence

Appellant claims that the evidence is insufficient to support the conviction because the State failed to establish appellant's identity as one of the robbers.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v.* State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The same standard of review is used for both circumstantial and direct evidence cases. *Id.* Identity can be proved by circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

To link appellant to the robbery, the State presented the following circumstantial evidence:

(1)     Testimony from Pang describing two black men wearing either a t-shirt or a "do-rag" covering their faces and holding guns who took money from the cash register and wallets and cell phones from the customers in the Subway shop.

(2)     Video surveillance of the robbery showing two black men, one of them wearing a white t-shirt, dark pants and jacket, and his face covered with a white t-shirt. The other man is seen wearing a white t-shirt, light colored pants, with his face covered by a scarf with a colorful pattern. Both men are holding guns. The man in the white t-shirt and dark pants and jacket is seen pointing the gun at Pang and taking his wallet. He is also seen taking a wallet and cell phone from the man who was eating.

(3)     Testimony from the officers that an ETS tag had been placed in the cash register of the Subway and that an ETS tag was taken by the people who robbed the Subway.

(4)     Testimony from the officers that a vehicle driven by appellant with a black male passenger, was tracked through the ETS system in close proximity to the Subway shortly after the robbery occurred.

(5)     Testimony and video showing that when appellant was apprehended after the police chase ended, he was wearing a white t-shirt and dark colored pants. His passenger was also wearing a white t-shirt.

(6)     Evidence that two loaded guns were recovered from the vehicle, as well as items of clothing matching the clothing worn by appellant during the robbery. Items of clothing worn by the co-defendant during the robbery were also found in the vehicle.

(7)     Testimony from the officers that the ETS tag placed in the cash register of the Subway was recovered from the vehicle.

(8)     Testimony from the officers that the money, wallets and cell phones taken during the robbery were recovered from the vehicle.

(9)     Testimony from Pang identifying one of the recovered wallets and its contents as belonging to him.

In addition to the evidence set out above, Officer Smith's testimony and the video of the police pursuit indicates that appellant tried to avoid apprehension. Flight is also a circumstance indicating guilt. *See Hardesty v. State*, 656 S.W.2d 73, 78 (Tex. Crim. App. 1983).

Under these facts, we hold that the evidence, when viewed in the light most favorable to the judgment, was sufficient for the jury to find beyond a reasonable doubt that appellant was one of the two men who committed the robbery. Appellant's argument that the evidence is deficient to prove his identity because there is no fingerprint or DNA evidence connecting appellant to the Subway, the guns, the property taken in the robbery, or any of the clothing recovered from the vehicle is without merit. There is no requirement that such evidence be presented. We overrule appellant's first issue.

## II. Jury Argument

In his second issue, Appellant claims that the trial court erred by overruling his objection to the improper jury argument by the prosecutor.

Permissible jury argument falls within four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Cole v. State*, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). To determine whether a party's argument falls within one of these areas, we must consider the argument in light of the entire record. *Id.*

During the final jury argument at the guilt/innocence phase of the trial, the following occurred:

> PROSECUTOR: Members of the Jury, Defense counsel got up here and had three major points of contention.
>
> DEFENSE COUNSEL: Objection. Facts not in evidence.
>
> THE COURT: That's overruled. Possible reasonable inference. But the jury will remember the evidence for themselves and take the instructions from me.
>
> Go ahead.
>
> DEFENSE COUNSEL: Thank you, Your Honor.

PROSECUTOR: Now, when you have those three points of contention, that says to me − and it should say to you as well − when you can't fight the evidence, you fight the man. And who was the man in this case? Detective Hay. You heard Defense counsel repeatedly ask on cross examination, what about Detective Hay? How come he didn't do this? How come he didn't do that?

Well, Ladies and Gentlemen, we didn't bring you Detective Hay, because we didn't need him. We brought you the very people who were on the ground helping the victims, helping to investigate this case, as well as apprehending this Defendant.

Appellant contends that the prosecutor's argument is improper because defense counsel did not make any "contentions" during his jury argument, nor did he ever mention the lead detective by name or "fight the man." Thus, according to appellant, the prosecutor's remark argued neither facts nor law.[2] The State argues that the prosecutor's argument regarding appellant's "contentions" directly responded to appellant's closing argument and defensive theory of the case. We agree with the State.

As pointed out in the State's brief, during trial, defense counsel cross-examined the officers regarding who was in charge of the investigation, whether fingerprints or DNA was collected, and why such evidence was not collected. During closing argument, defense counsel argued that such evidence could have been easily obtained based upon the circumstances of the crime and the items recovered from appellant's vehicle. Defense counsel further argued that such evidence was not collected because the Richardson Police Department chose not to do so. Defense counsel's cross-examination of the witnesses and jury argument clearly implied that the officers investigating the robbery did not conduct a thorough investigation before determining that appellant was guilty of the offense. "Counsel is generally afforded wide latitude in drawing inferences from the record, as long as such inferences are reasonable and offered in good faith."

---

[2] Defense counsel did not object to the prosecutor's reference to Detective Hay or the remark "fight the man." Thus, nothing has been preserved for review with regard to these remarks. *See* TEX. R. APP. P. 33.1.

*Cantu v. State*, 842 S.W.2d 667, 690 (Tex. Crim. App. 1992). We cannot say on the basis of this record that the trial court erred in overruling appellant's objection to the prosecutor's remark. We overrule appellant's second issue.

## III. Modification of Judgments

The trial court's judgment in each case reflects that appellant pleaded "True" to the enhancement paragraph. However, the record reflects appellant pleaded "not true" to the enhancement paragraph. Accordingly, we modify the section of the judgment titled "Plea to 1st Enhancement Paragraph" to state "Not True." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.— Dallas 1991, pet. ref'd).

CONCLUSION

We modify the trial court's judgment in each case to reflect appellant pleaded "not true" to the enhancement paragraph of the indictment. As modified, we affirm the trial court's judgments.

/David W. Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
160726F.U05

–8–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ANTONIO DEMOND DOUGLAS,
Appellant

No. 05-16-00726-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F14-45376-L.
Opinion delivered by Justice Evans, Justices
Fillmore and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect Antonio Demond Douglas pleaded "not true" to the enhancement paragraph. As **MODIFIED,** the judgment is **AFFIRMED**.

Judgment entered this 21st day of July, 2017.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ANTONIO DEMOND DOUGLAS,
Appellant

No. 05-16-00727-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F14-45379-L.
Opinion delivered by Justice Evans, Justices
Fillmore and Boatright participating.

        Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect Antonio Demond Douglas pleaded "not true" to the enhancement paragraph.  As **MODIFIED,** the judgment is **AFFIRMED**.

Judgment entered this 21st day of July, 2017.